| | |
|---|---|
| **UNITED STATES BANKRUPTCY COURT** <br> **SOUTHERN DISTRICT OF NEW YORK** | **NOT FOR PUBLICATION** |

---------------------------------------------------------------x

| | |
|---|---|
| In re: | Chapter 11 |
| Quebecor World (USA), Inc., *et al.*, | Case. No. 08-10152 (SHL) |
| Debtors. | (Jointly Administered) |

---------------------------------------------------------------x

| | |
|---|---|
| Eugene I Davis, as Litigation Trustee for the <br> Quebecor World Litigation Trust, | |
| Plaintiff, | |
| v. | Adv. No. 10-01250 (SHL) |
| Binswanger Corporate Services, Inc. dba Binswanger, | |
| Defendant. | |

---------------------------------------------------------------x

## MEMORANDUM OF DECISION

A P P E A R A N C E S:

Ask LLP
Attorneys for Eugene I. Davis, as Litigation Trustee
for the Quebecor World Litigation Trust
By:    Joseph L. Steinfeld, Jr. Esq.
       (*Admitted Pro-Hac Vice*)
       Kara E. Casteel, Esq.
       (*Admitted Pro-Hac Vice*)
       2600 Eagan Woods Drive, Suite 400
       St. Paul, MN 55121

       Edward E. Neiger, Esq.
       Brigette G. McGrath, Esq.
       151 West 46th Street, 4th Floor
       New York, NY 10036

O'Kelly Ernst & Bielli, LLC
Attorneys for Binswanger Corporate Services, Inc.
By:    Thomas D. Bielli
       (*Admitted Pro-Hac Vice*)
       1600 N. Market Street, 25th Floor
       Philadelphia, PA 19103

**SEAN H. LANE**
**UNITED STATES BANKRUPTCY JUDGE**

  Before the Court is a motion for summary judgment filed by plaintiff Eugene I. Davis as Litigation Trustee for the Quebecor World Litigation Trust (the "Trustee") in the above captioned adversary proceeding. The Trustee seeks to avoid and recover a single alleged preferential transfer totaling $109,500.00 (the "Transfer") made by the Debtors to Binswanger Corporate Services, Inc. ("Binswanger") during the 90 day preference period before the Debtors filed their Chapter 11 case, plus prejudgment interest in the amount of $15,763.20. Binswanger opposes the motion.[1] For the reasons set forth below, the Court grants the Trustee's motion for summary judgment.

## BACKGROUND

  On January 21, 2008, the Debtors filed the underlying bankruptcy case under Chapter 11 of Title 11 of the United States Bankruptcy Code (the "Petition Date"). On May 18, 2009, the Debtors filed its Third Amended Joint Plan of Reorganization of Quebecor World (USA), Inc. and Certain Affiliated Debtors and Debtors-In-Possession (the "Plan"). On July 2, 2009, this Court entered the Findings of Fact, Conclusions of Law, and Order Confirming the Plan (the "Plan").

  Pursuant to the Plan, a litigation trust administered by the Trustee was created to pursue certain claims as defined under the terms of Plan. On January 11, 2010, the Trustee filed an adversary proceeding to avoid a preferential transfer in the amount of $109,500.00 made by the Debtors to Binswanger within 90 days of the commencement of the Debtors' Chapter 11 case.

---

[1]   The parties made no request for a jury trial, nor did they raise an issue regarding the bankruptcy court's constitutional ability to hear and decide the merits of this matter. This is not surprising given that Binswanger is an unsecured creditor. *See* Trustee's Statement of Undisputed Material Facts ¶¶13-14 (ECF No. 40); *see also Katchen v. Landy,* 382 U.S. 323, 330-31 (1996). As Binswanger did not file an opposition to the Trustee's Statement of Undisputed Material Facts, this fact is deemed admitted. *See In re Dana Corp.* 574 F.3d 129, 148 (2d Cir. 2009).

2

*See* Complaint (ECF No. 1). Specifically, the Trustee's complaint seeks to avoid the transfer pursuant to 11 U.S.C. Sections 547, 548, 549, and 502, and to recover the property transferred pursuant to 11 U.S.C. Section 550. *Id*. at ¶ 1.

The material facts in this case are not in dispute. Binswanger is an international real estate company engaged in a range of real estate related services. From 2004 to 2007, the Debtors hired Binswanger and its related entities to sell several of the Debtor's properties throughout the United States. Def.'s Exs. A - J (ECF No. 7). The Debtors and Binswanger entered into several agency agreements that provided that Binswanger would receive commission upon the sale or disposition of at least eight properties located in Tennessee, Nebraska, and Illinois. *Id.*

On March 27, 2006, the Debtors engaged Binswanger to serve as its agent for the sale of commercial property located at 3925 Selmaville Road, Salem, Illinois 62281 (the "Property"), with the parties entering into an exclusive listing agreement (the "Agreement"). Exclusive Listing Agreement, Def.'s Exs. H, I, and J (ECF No. 7). Pursuant to the Agreement, Binswanger was to serve as a real estate agent for the sale or lease of the Property until October 31, 2007. *Id.* The Agreement contemplated that a donation of the Property to a Section 501(c)(3) or other non-profit, charitable or government entity would qualify as a sale for purposes of the Agreement. Defendant's Exhibit H at 9 (ECF No. 7). In the case of a donation, Binswanger's would receive five percent of the owner's income tax benefit. *Id.* On November 29, 2007, the Debtors transferred $109,500.00 by check from the Debtors' corporate bank account to Binswanger as commission. Decl. of Eugene Davis ¶ 8 (ECF No. 40, Exhibit 1 to Memo. of Law).

3

**DISCUSSION**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed. R. Civ. P. 56(a) (made applicable to the adversary proceeding by Fed. R. Bankr. P. 7056). The moving party bears the burden of demonstrating the absence of any genuine issue of material fact, and all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Ames Dep't Stores, Inc. v. Wertheim Schroder & Co., Inc.*, 161 B.R. 87, 89 (Bankr. S.D.N.Y. 1993). Once the moving party meets this initial burden, the non-moving party must go beyond the pleadings and by its own evidence and demonstrate that there is a genuine issue of fact for trial by "a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322 – 323.

If the non-moving party has met the burden of establishing the existence of a dispute as to a genuine issue of material fact, summary judgment must be denied unless the moving party comes forward with additional evidence sufficient to satisfy their burden under Rule 56. *Reciprocal Merch. Servs., Inc. v. All Adver. Assocs., Inc.,* 163 B.R. 689, 695 (S.D.N.Y.1994); *See Celotex*, 477 U.S. at 330. In sum, if the Court determines that "the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting

*First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 288-289 (1969)); *see also Weg v. Macchiarola,* 654 F.Supp. 1189, 1191–92 (S.D.N.Y. 1987).

**A.  Preferential Transfers and the Ordinary Course of Business Defense**

To be recoverable as a preferential transfer, a payment must satisfy all of the requirements of Section 547(b).  The Trustee bears the burden of proving the transfers were:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such Transfers were made;

(3) made while the debtor was insolvent;

(4) on or within ninety (90) days before the date of filing of the petition; and

(5) enable the benefited creditor to receive more than such creditor would have received had the case been a chapter 7 liquidation and the creditor not received the transfer.

11 U.S.C. § 547(b).

Here, it is undisputed that the Debtors' payment to the Defendant meets the criteria of Section 547(b) and therefore is a preference as defined by the Code.  Trustee's Statement of Undisputed Material Facts ¶¶13-18 (ECF No. 40); *see* Def.'s Memo. of Law, at 1-2 (ECF No. 43).  Although it received a preferential payment, Binswanger argues that the payment in question falls under the "ordinary course of business" exception in Section 547(c)(2) that makes it unrecoverable by the Trustee.  Section 547(c)(2) of the Bankruptcy Code, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), provides that:

(c) The trustee may not avoid under this section a transfer –

(2) to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was –

5

>   (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
>   (B) made according to ordinary business terms.

11 U.S.C. § 547(c)(2).[2] A defendant bears the burden of proving an affirmative defense under Section 547(c)(2) by a preponderance of the evidence. *Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.)*, 78 F.3d 30, 39 (2d Cir. 1996); 11 U.S.C. § 547(g).

The ordinary course of business exception to preference liability protects "recurring, customary credit transactions that are incurred and paid in the ordinary course of business of the debtor and the debtor's transferee." *Official Comm. Of Unsecured Creditors of Enron Corp. v. Martin (In re Enron Creditors Recovery Corp.)*, 376 B.R. 442, 459 (Bankr. S.D.N.Y. 2007) (quoting *Sender v. Heggland Family Trust (In re Hedged-Investments Assocs.)*, 48 F.3d 470, 475 (10th Cir. 1995)). The purpose of the exception is to "leave undisturbed normal financial relations, because it does not detract from the general policy of the preference section to discourage unusual action by either the debtor or [its] creditors during the debtor's slide into bankruptcy." *In re Roblin Indus., Inc.*, 78 F.3d at 41 (quoting H.R. Rep. No. 95-595 (1978) at 373, *Reprinted in* 1978 U.S.C.C.A.N. 5963, 6329).

The BAPCPA amendments made the test for an ordinary course of business defense disjunctive, allowing a defendant to prevail by proving either the so called "subjective" test under Section 547(c)(2)(A), or the so called "objective" test under Section 547(c)(2)(B). *See Jacobs v. Gramercy Jewelry Mfg. Corp. (In re Fabrikant & Sons, Inc.)*, No. 06-12737, 2010 WL 4622449, at *2 (Bankr. S.D.N.Y. Nov. 4, 2010). Binswanger did not supply any evidence relating to the objective defense for the so called "ordinary business terms." As such, the

---

[2] As the wording of the subparts was not changed by BAPCPA in 2005, the case law prior to BAPCPA's enactment as to the requirement of the section remains good law.

Defendant has not provided the Court with a basis to deny summary judgment based on the relevant industry practice under Section 547(c)(2)(B). *See In re Roblin Indus., Inc.*, 78 F.3d at 41.[3]

Binswanger instead relies upon the subjective defense set forth in subsection (A) that applies to transfers "made in the ordinary course of business or financial affairs of the debtor and the transferee." 11 U.S.C. § 547(c)(2)(A). Subsection (A) "requires an examination of whether a transfer was ordinary between the parties to the transfer." *Daly v. Radulesco (In re Carrozzella & Richardson)*, 247 B.R. 595, 603 (B.A.P. 2d Cir. 2000); *see also In re Enron Creditors Recovery Corp.*, 376 B.R. at 459 (stating that the subjective test focuses solely on the prior dealings of debtor and creditor). In determining whether a transfer satisfies the requirements of Section 547(c)(2)(A), courts examine several factors including "(i) the prior course of dealing between the parties, (ii) the amount of the payment, (iii) the timing of the payment, (iv) the circumstances of the payment, (v) the presence of unusual debt collection practices, and (vi) changes in the means of payment." *Buchwald Capital Advisors LLC v. Metl-Span I., Ltd. (In re Pameco Corp.)*, 356 B.R. 327, 340 (Bankr. S.D.N.Y. 2006); *Official Comm. of Unsecured Creditors of 360networks (USA) Inc. v. U.S. Relocation Servs. (In re 360networks (USA) Inc.)*, 338 B.R. 194, 210 (Bankr. S.D.N.Y. 2005); *see also Hassett v. Goetzmann (In re CIS Corp.)*, 195 B.R. 251, 258 (Bankr. S.D.N.Y. 1996) (stating that courts typically examine the prior course of dealing between the parties, the amount of the payment, the timing of the payment, and the circumstances surrounding the payment). To prevail under subsection (A), therefore, the creditor must establish a "baseline of dealings" between the parties to "enable the court to compare the

---

[3]   At the summary judgment hearing, Binswanger's counsel noted that it is customary that brokers selling real estate receive commission upon the disposition of property for sales services. But it provided no evidence of customary industry practice in its opposition to summary judgment, including but not limited to the amount of commission customary in the industry for the type of property here or amount of commission customary for a property donated for tax purposes under Section 503(c) of the Tax Code. *See* Def.'s Memo. of Law (ECF No. 43).

payment practices during the preference period with the prior course of dealing." *In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *3; *Cassirer v. Herskowitz (In re Schick)*, 234 B.R. 337, 348 (Bankr. S.D.N.Y. 1999). In this way, the creditor must "demonstrate some consistency with other business transactions between the debtor and the creditor." *In re Fabrikant & Sons, Inc.*, 2010 WL 4622449, at *3.

### B. Defendant's Ordinary Course of Business Defense

Binswanger supported its ordinary course of business defense with three documents regarding this Property.[4] The first of these is an exclusive listing agreement between Binswanger, as agent for this Property, and Debtor, as owner. The agreement stated—among other terms—the duration of the agreement, a description of the Property, the sale price, a description of what constitutes an event of sale, the commission rate, and that commission for the disposition of the Property could be based on the income tax benefit received by the owner upon donation of the Property to a 501(c)(3) or other non-profit, charitable or government entity. Def.'s Ex. H (ECF No. 7). Binswanger also produced an Agency Memorandum listing the asking price, the location of the Property, the rate of commission, the owner of the Property, and the primary salesman. Def.'s Ex. I (ECF No. 7). The Agency Memorandum is little more than a two page summary of the exclusive listing agreement. Finally, Binswanger provided a service memorandum for the Property noting the amount of commission charged, that there were "no partners for this contract," and that the owner of the property would not provide any documentation regarding the actual donation of the property. Def.'s Ex. J (ECF No. 7). At the hearing on the motion, Binswanger also provided evidence of previous real estate transactions where it acted as the broker for the Debtors. The evidence of these prior transactions included

---

[4] These documents were attached as exhibits to Binswanger's Answer as exhibits H, I, and J. In its opposition to the Trustee's motion, Binswanger requested that the Court consider these documents on summary judgment. *See* Def.'s Memo. of Law, at 6, n.2 (ECF No. 43).

documentation pertaining to the ultimate disposition of the properties such as details about the sales price and the calculation of the commission. Pl.'s Reply Exs. 1, 2, and 3 (ECF No. 44). This evidence provided a picture of the prior course of dealings between the parties as to three previous real estate deals where Binswanger acted as broker.

All that can be gleaned from the evidence submitted by Binswanger is that the Debtors engaged Binswanger as a real estate broker for the Property and that the Debtors ultimately transferred $109,500.00 to Binswanger during the Preference Period. There was no evidence submitted that, in fact, a sale or donation of this property occurred. Indeed Binswanger's counsel conceded at the hearing that he did not know whether the Property was ultimately disposed or donated.[5] The record is devoid of any evidence of the transaction that triggered the broker fee and thus no evidence has been provided to permit the Court to compare such a transaction with the pre-Preference Period transactions. While Binswanger suggested based on the service memorandum for the Property that the parties believe the property to have been donated, there was no evidence provided in that document or anything else of the tax benefit received by the Debtors so as to justify the commission. Without any evidence regarding the value of the donation for the Property, it is impossible to determine that the transaction at issue appropriately triggered the broker fee paid here and that this fee was appropriate when compared with the pre-Preference Period transactions. For all these reasons, a rational trier of fact cannot conclude that Binswanger presented sufficient evidence to establish existence of the elements necessary for the ordinary course of business defense under Section 547(c)(2)(A). *See Leberman v. U.S. Xpress Enterprises, Inc.*, WL 6031538 (N.D.N.Y. Dec. 5, 2011). Given that the Trustee has established

---

5    The Court would normally cite to the transcript of the summary judgment hearing. But no party ordered the transcript, and the Court is not in a position to pay for the transcript given the severe economic restrictions of sequestration. The Court instead relies on its notes of the hearing and its recollection.

9

its prima facie case under Section 547(b) and Binswanger did not meet its burden to establish a defense under Section 547, the Court must therefore grant the Trustee's motion for summary judgment.

**C.  Pre-Judgment Interest**

The Court also grants the Trustee's request for pre-judgment interest, which is within a court's discretion for actions brought under 11 U.S.C. Section 547.  *In re Pameco Corp.*, 356 B.R. 327, 342 (Bankr. S.D.N.Y. 2006); *Off. Comm. of Unsecured Creditors of Cyberrebate, Inc. v. Gold Force Int'l (In re Cyberrebate.com, Inc.)*, 296 B.R. 639, 645 (Bankr. E.D.N.Y. 2003). Pursuant to Section 550(a), a plaintiff can recover a preferential transfer or its value.  11 U.S.C. § 550(a).  The policy of Section 550 is to restore to the estate the full value of the asset transferred to the preferred creditor, thereby compensating the estate for the loss of the time value of the asset.  *In re L&T Steel Fabricators, Inc.*, 102 B.R. 511, 521 (Bankr. M.D. La. 1989).  Value includes pre-judgment interest from the date of the transfer.  *Id.*  The time value of money is an asset of the estate that should be recovered for the benefit of all creditors under the policy in the Bankruptcy Code, which favors equal treatment for all creditors of a bankruptcy estate.  By awarding pre-judgment interest from the date of a preferential transfer, both the estate and the transferee are restored to the economic position each were in prior to the preferential transfers. Pre-judgment interest is not a penalty, but rather is viewed as delayed damages to be awarded as a component of compensation to the prevailing party.  *General Motors Corp. v Devex Corp.*, 461 U.S. 648, 654 n.10 (1983); *see also West Virginia v. United States*, 479 U.S. 305, 310 n.2 (1987).

## CONCLUSION

For the reasons stated above, the Court grants the Plaintiff's motion for summary judgment. The Plaintiff shall settle a proposed order on three days' notice.

Dated: New York, New York
      September 25, 2013

                                            */s/ Sean H. Lane*
                                       UNITED STATES BANKRUPTCY JUDGE